SHEPPARD MULLIN RICHTER & HAMPTON LLP
Theodore Max
  tmax@sheppardmullin.com
30 Rockefeller Plaza
New York, New York 10112
Telephone: 212-653-8700
Facsimile: 212-653-8701

*Attorneys for Plaintiff*
LIFE ALERT EMERGENCY RESPONSE, INC.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LIFE ALERT EMERGENCY RESPONSE, INC., a California corporation,<br><br>        Plaintiff,<br><br>        v.<br><br>CONNECT AMERICA.COM, LLC, a Delaware limited liability company, KENNETH GROSS, an individual, LIFEWATCH, INC., a New York corporation, EVAN SIRLIN, an individual, LIVE AGENT RESPONSE 1, LLC, a Florida limited liability company, GREG SMALL, an individual, TRILOGY INVESTMENTS, LLC, Florida limited liability company, and DOES 1 to 10, inclusive,<br><br>        Defendant. | CIVIL ACTION<br><br>Case No. 14 Misc. 0412<br><br>**PLAINTIFF LIFE ALERT EMERGENCY RESPONSE, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT LIFEWATCH'S MOTION TO QUASH NON-PARTY SUBPOENA TO COMMUNITY NATIONAL BANK**<br><br>(USDC CD Cal. Case No. 2:13-cv-03455-JAK (SS)) |

**TABLE OF CONTENTS**

Page

I.  INTRODUCTION ............................................................................................... 1

II. STATEMENT OF RELEVANT FACTS............................................................. 2

   A.  Life Alert And Its Famous Trademarks ...................................................... 2

   B.  LifeWatch's History Of Infringing Life Alert's Trademarks ..................... 2

   C.  Despite A Permanent Injunction, LifeWatch Continues To Infringe
       Life Alert's Trademarks .............................................................................. 3

       1.  The Robo-Call Scheme ..................................................................... 3

       2.  As Part Of The Robo-Call Scheme, LifeWatch Entered Into
           Dozens Of Agreements For Telemarketing Services........................ 4

       3.  Government Agencies Have Filed Actions Against LifeWatch
           And Its Telemarketers As A Result of The Robo-Call Scheme ........ 5

   D.  Given Its Participation In The Robo-Call Scheme And Its Other Use
       Of Life Alert's Trademarks, Life Alert Sued LifeWatch Again For
       Trademark Infringement And Unfair Competition ..................................... 8

III. LIFEWATCH'S MOTION SHOULD BE DENIED ............................................ 9

   A.  LifeWatch Has The Burden To Establish A Privacy Interest That
       Outweighs Life Alert's Right To Seek Relevant Discovery Under
       The Federal Rules Of Civil Procedure ........................................................ 9

   B.  LifeWatch Has Failed To Establish A Privacy Interest In The
       Requested Documents Or That Its Purported Privacy Interest
       Outweighs Life Alert's Right To The Discovery It Seeks......................... 10

   C.  Even If LifeWatch Had Met Its Burden, Denial Of Its Motion Would
       Still Be Appropriate................................................................................... 13

IV. CONCLUSION ................................................................................................. 14

# **TABLE OF AUTHORITIES**

**Cases**     **Page(s)**

*Brassco, Inc. v. Klipo*
  2004 U.S. Dist. LEXIS 11164 (S.D.N.Y. June 21, 2004)..........................................................12

*Carey v. Berisford Metals Corp.*
  1991 U.S. Dist. LEXIS 3776 (S.D.N.Y. Mar. 28, 1991) ...........................................................9

*Chazin v. Lieberman*
  129 F.R.D. 97 (S.D.N.Y. 1990) ................................................................................................13

*Conopco, Inc. v. Wein*
  2007 U.S. Dist. LEXIS 53314 (S.D.N.Y. July 23, 2007) ....................................................9, 12

*Del Campo v. Am. Corrective Counseling Servs., Inc.*
  2008 U.S. Dist. LEXIS 93298 (N.D. Cal. Nov. 10, 2008).......................................................11

*Iglesias-Mendoza v. La Belle Farm, Inc.*
  2008 U.S. Dist. LEXIS 47431 (S.D.N.Y. June 12, 2008).........................................................12

*Mercator Corp. v. U.S.*
  318 F.3d 379 (2d Cir. 2002)........................................................................................................9

*Noel v Bank of New York Mellon*
  2011 U.S. Dist. LEXIS 84106 (S.D.N.Y. July 27, 2011) ..........................................................9

*Sierra Rutile Ltd. v. Katz*
  1994 U.S. Dist. LEXIS 6188 (S.D.N.Y. May 11, 1994)....................................................10, 12

**Statutes**     **Page(s)**

15 U.S.C. § 1125(a) ..........................................................................................................................7

**Other Authorities**     **Page(s)**

16 C.F.R. § 310 ................................................................................................................................5

Fed. R. Civ. P. 26(b)(1)..................................................................................................................12

Fed. R. Civ. P. 45(d)(3)(A)(iv) .......................................................................................................9

I.      **INTRODUCTION**

Defendant LifeWatch, Inc. ("LifeWatch") has been infringing Plaintiff Life Alert Emergency Response, Inc.'s ("Life Alert") trademarks since at least 2008 (resulting in a first lawsuit against LifeWatch), and stonewalling Life Alert in discovery in this second lawsuit since the Fall of 2013. LifeWatch has refused to produce any substantive documents, to properly identify the telemarketers and other "outside sellers" that sell its goods and services, and, in general, to comply with its discovery obligations under the Fed.R.Civ.P. Given this, it should come as no surprise to LifeWatch – a purported "small local company" which has earned tens of millions of dollars from its infringement and unfair competition – that Life Alert would seek the documents necessary to establish its case from third parties. Indeed, LifeWatch has failed to even attempt to meet its burden in seeking to quash a subpoena to a third party, and instead makes conclusory arguments about the confidentiality of the materials sought, ignores the protective order that has been entered in the California Action and was provided to the subpoenaed party, and relies on irrelevant case law and argument.

The simple fact is that Life Alert served a targeted subpoena on one of LifeWatch's banks seeking information about one of LifeWatch's accounts – *the account that LifeWatch admits, and third party governmental agencies have found, LifeWatch uses to transfer tens of millions of dollars to the telemarketers and outside sellers LifeWatch hires to sell its products and services through infringement and other unfair competition*. To succeed on its motion, LifeWatch must establish not only that the information sought is confidential, but that LifeWatch's privacy interest (despite the existence of the protective order) outweighs Life Alert's right to this highly relevant information. LifeWatch has failed to do so. LifeWatch's motion should be denied.

/ / /

/ / /

/ / /

/ / /

## II.     STATEMENT OF RELEVANT FACTS

### A.     Life Alert And Its Famous Trademarks

Life Alert has provided medical alert products and services for seniors on a 24 hour-a-day, 7 day-a-week basis for more than 25 years.  (Aigboboh Decl. ¶ 2, Ex. A at ¶ 18.)  Life Alert owns valuable and enforceable trademark rights to many well-known marks associated with its medical alert products and services including the registered trademarks LIFE ALERT and I'VE FALLEN AND I CAN'T GET UP!  (*Id*. at ¶¶ 19-25.)  Life Alert's marks are famous and instantly recognizable as associated with Life Alert's goods and services.  (*Id*. at ¶ 29.)

### B.     LifeWatch's History Of Infringing Life Alert's Trademarks

In early 2008, Life Alert learned that LifeWatch, a direct competitor, was using Life Alert's trademarks in its advertising, including placing online ads that stated "Lifewatch-usa 'I've fallen and I can't get up' As seen on TV" and directed consumers to Lifewatch's website, and print ads that used Life Alert's I'VE FALLEN AND I GET UP! trademark.  (Aigboboh Decl. ¶ 2, Ex. A at ¶¶ 54-57; *see also* Aigboboh Decl. ¶ 3, Ex. B at 3.)  On April 2, 2008, Life Alert filed a complaint for trademark infringement against LifeWatch in the United States District Court for the Central District of California, Case No. CV-08-02184 CAS (the "2008 Action").  (Aigboboh Decl. ¶ 2, Ex. A at ¶¶ 58; *see also* Aigboboh Decl. ¶ 3, Ex. B at 3.)

On August 25, 2008, the district court in the 2008 Action entered a permanent injunction against LifeWatch and its CEO Evan Sirlin, enjoining them, and anyone acting on their behalf or in concert with them, from infringing Life Alert's trademarks.  (Aigboboh Decl. ¶ 3, Ex. B at 3.)  However, LifeWatch continued to infringe Life Alert's trademarks in its advertising.  (Aigboboh Decl. ¶ 2, Ex. A at ¶ 61.)[1]

/ / /

/ / /

/ / /

---

[1]     On April 3, 2014, LifeWatch moved to vacate the 2008 judgment, and, on May 19, 2014, the district court in the 2008 Action denied LifeWatch's motion.  (Aigboboh Decl. ¶ 4, Ex. C.)

### C. Despite A Permanent Injunction, LifeWatch Continues To Infringe Life Alert's Trademarks

In addition to its use of Life Alert's trademarks in its advertising, since at least as early as August 2012, LifeWatch has sold its competing products and services through a nationwide illegal automated phone call scheme that targets senior citizens (the "Robo-Call Scheme").

#### 1. The Robo-Call Scheme

As part of the Robo-Call Scheme, individuals (primarily senior citizens), including those who are on the National Do Not Call Registry, receive illegal automated "robo-call" phone calls. (Aigboboh Decl. ¶ 2, Ex. A at ¶ 64; *see also* Aigboboh Decl. ¶ 3, Ex. B at 3.)  When senior citizens answer the robo-calls, the telemarketer offers to provide a medical alert device and monitoring services by claiming to be Life Alert, referring to Life Alert's "T.V. commercial 'Help, I've Fallen and I Can't Get Up" and claiming "that's us," and referencing Life Alert's trademarks including, but not limited to I'VE FALLEN AND I CAN'T GET UP.  (Aigboboh Decl. ¶ 3, Ex. B at 5-6.)  If a senior citizen questions whether the salesperson was actually representing or selling Life Alert's systems, the salesperson responds affirmatively.  (*Id*.)  The telemarketers also make other material misrepresentations, including that the "medical alert system has already been purchased for the consumer by a friend, family member, or other acquaintance," and that the "medical alert system is endorsed by the American Heart Association, the American Diabetes Association, and/or the National Institute on Aging."

When a senior citizen agrees to purchase the medical alert system and services offered on these calls, they receive products from LifeWatch. (Aigboboh Decl. ¶ 3, Ex. B at 6.)[2]  These consumers believed they were receiving products and services from Life Alert or a company associated with Life Alert.  (*Id*.)

---

[2]  Through the Robo-Call Scheme, Lifewatch also obtained customers for a least one other medical alert system company – Connect America.com, LLC ("Connect America"). (Aigboboh Decl. ¶ 3, Ex. B at 1.)  Connect America and its Executive Chairman Kenneth Gross were defendants in this action.  Life Alert subsequently resolved its claims against Connect America and Mr. Gross and the claims against them were dismissed.  (*Id*.)

LifeWatch is and was well aware of the infringing conduct. As is discussed below, LifeWatch has the right to review and approve telemarketing scripts and recordings of telemarketing calls. Furthermore, despite LifeWatch's unsupported contention to the contrary, it did receive complaints from consumers indicating that "they were swindled into purchasing Life[W]atch's products and services." (Mot. at 2.).[3] For example, one consumer who purchased LifeWatch's products and services during a telemarketing call later canceled her order, sending LifeWatch a letter that explained:

> I want to be clear that as far as I am concerned, I never entered into any agreement with LifeWatch, Inc. Instead, after receiving numerous robocalls at my residence, I gave credit card information to a salesperson during a telephone call. That salesman referenced the company with the TV commercial in which the women says "I've Fallen and I Can't Get Up," which I understood to be Life Alert.

(Aigboboh Decl. ¶ 5, Ex. D at ¶ 6, Ex. C.)

### 2. As Part Of The Robo-Call Scheme, LifeWatch Entered Into Dozens Of Agreements For Telemarketing Services

LifeWatch contends that it "does not telemarket or employ telemarketers." (Mot. at 2.) This is demonstrably false. As Judge John A. Kronstadt found when he granted Life Alert's motion for a preliminary injunction in the underlying case currently pending in the Central District of California (the "California Action"), LifeWatch entered into "Telemarketing Services Agreements" that gave it complete control over the telemarketing services provided on its behalf including, but not limited to, the right to approve any and all telemarketing scripts. (Aigboboh Decl. ¶ 3, Ex. B at 8.) One such agreement is the Telemarketing Services Agreement between LifeWatch and Worldwide Info Services Inc. ("Worldwide"), dated June 1, 2012 the ("Worldwide Agreement"). (*Id.*) Pursuant to the Worldwide Agreement, LifeWatch engaged Worldwide to provide telemarketing services under the terms specified. (*Id.*) Every new

---

[3]   LifeWatch has not produced any complaints, despite Life Alert's repeated requests. Life Alert is aware of the complaints because it has received a high volume of complaints as a result of the LifeWatch's unlawful conduct. (Aigboboh Decl. ¶ 3, Ex. B at 16-17.)

-4-

customer that Worldwide obtained required express approval by LifeWatch, and LifeWatch processed payments and fulfilled orders for all customers. (*Id*.)

LifeWatch also enters into purported "Purchase Agreements" for the provision of telemarketing services. As Judge Kronstadt found in the California Action, the purported "Purchase Agreements" are for the provision of, *inter alia*, telemarketing services, services which LifeWatch sought and exercises control. (Aigboboh Decl. ¶ 3, Ex. B at 12-13.) Among other things, the "Purchase Agreements" require "that telemarketing activities 'shall be conducted in accordance with all applicable federal, state, and local laws, rules and regulations….'" (*Id*. at 12).) To this end, "the Purchase Agreements refer specifically to the requirement that the Seller comply with, *inter alia*, the Telemarketing Sales Rule…16 C.F.R. § 310," which prohibits "deceptive telemarketing act[s] or practice[s]." (*Id*.) The "Purchase Agreements" also require that only approved scripts are used for telemarketing and that all telemarketing calls be recorded and be made available to LifeWatch. (*Id*. at 13.)

Based on this, Judge Kronstadt has already found that LifeWatch did and does employ telemarketers and that it controls those telemarketers, and has entered a preliminary injunction against Life Alert and those performing telemarketing on its behalf. Thus, LifeWatch's contention that it does not employ telemarketers is false, has been disregarded by courts, and is a perfect example of how LifeWatch's conduct has necessitated the subpoena to non-party Community National Bank.

### 3. Government Agencies Have Filed Actions Against LifeWatch And Its Telemarketers As A Result of The Robo-Call Scheme

Life Alert is not the only entity that is pursuing LifeWatch and its telemarketers for their wrongful conduct. Governmental agencies have sought, and obtained, injunctions and judgments against LifeWatch and its telemarketers.

In August 2012, the State of Indiana brought an action against Worldwide, alleging unlawful telephone solicitation practices. (Aigboboh Decl. ¶ 2. Ex. A at ¶ 72.) The State of Indiana sought a temporary restraining order against Worldwide and introduced as evidence a telemarketing script that Worldwide was using that referenced Life Alert's trademarks and would

have been approved by LifeWatch under the terms of the Worldwide Agreement.  (*Id*. at ¶ 73; *see also* Aigboboh Decl. ¶ 3, Ex. B at 8.)  The Indiana court entered a temporary restraining order and preliminary injunction.  (Aigboboh Decl. ¶ 2. Ex. A at ¶ 73.)

The State of Indiana later amended its complaint (in November 2012), naming both LifeWatch and Worldwide and alleging that, since at least June 2012, LifeWatch and Worldwide have solicited Indiana consumers to buy medical alert systems and services using robo-calls, including to consumers on Indiana's Do Not Call Registry.  (Aigboboh Decl. ¶ 2. Ex. A at ¶ 74.)

In or around January 2014, the Federal Trade Commission, the State of Florida, and others (collectively, the "FTC") filed an action against Worldwide and other telemarketers in U.S. District Court in Florida alleging that the Worldwide and the other telemarketers sold medical alert systems by using illegal robo-calls, calling telephone numbers listed on the National Do Not Call Registry without consent, and making material misrepresentations regarding the medical alert systems they were selling ("FTC Action").  (Aigboboh Decl. ¶ 6, Ex. E at ¶¶ 40-42.)[4]

A temporary restraining order and preliminary injunction were entered in the FTC Action, and a receiver was appointed.  (Aigboboh Decl. ¶ 7, Ex. F.).  In the receiver's January 2014 report, the receiver identified LifeWatch as "the medical device and alert response provider…that processes charges to consumers after the consumers are solicited by the…defendants [the telemarketers]."  (*Id*. at Ex. A at 6.)  The receiver reported that it had "located several service agreements between the…defendants [the telemarketers] and LifeWatch."  (*Id*.)  The receiver also located defendants' telemarketing scripts.  (Aigboboh Decl. ¶ 8, Ex. G.)  The scripts used Life Alert's trademarks, and included other false and misleading information.  (*Id*.)

---

[4]   Despite LifeWatch's admission to the FTC that it retained and paid defendant-telemarketer Global Interactive Technologies, Inc. more than $3 million for telemarketing services and retained and paid defendant-telemarketer American Innovative Concepts, Inc. nearly $4 million for the same services, LifeWatch has never disclosed either in any discovery response or in the production of documents in the California Action.  (Aigboboh Decl. ¶ 15.)

LifeWatch reported to the receiver that it paid the telemarketer defendants – each of which used scripts that infringed Life Alert's trademarks – whom telemarketer tens of millions of dollars to sell its products from March 2012 to December 2013.  (Aigboboh Decl. ¶ 8, Ex. G.) These payments include:

1. Transfers in the amount of $8,606,661.50 from LifeWatch's bank account ending in -0183 with non-party Community National Bank (referred to as the "Operating Account") to defendant-telemarketer Worldwide;

2. Transfers in the amount of $2,390,277.10 from LifeWatch's Operating Account to defendant-telemarketer Global Interactive Technologies; and

3. Transfers in the amount of $2,450,853.90 from LifeWatch's Operating Account to defendant-telemarketer American Innovative Concepts.

(Aigboboh Decl. ¶ 9, Ex. H.)  Two of these telemarketers have not been properly disclosed by LifeWatch.  (Aigboboh Decl. ¶ 15.)  Accordingly, the FTC found that these millions of dollars were paid by LifeWatch from ***its Operating Account with Community National Bank, which is the sole account that is subject to Life Alert's subpoena, to telemarketers that LifeWatch has never properly disclosed***.  (*Id*.)[5]  To date, LifeWatch has refused to produce this unquestionably relevant information to Life Alert, despite repeated requests.

The FTC has entered into stipulated injunctions and judgments with the telemarketing defendants.  In doing so, it has found that LifeWatch earned no less than ***$22,989.609*** from a ***few of its telemarketers' activities***.  (Aigboboh Decl. ¶ 10, Ex. I.)  To reiterate, LifeWatch has refused to produce a single document related to the millions of dollars it earned from infringing telemarketing activities by a few of its dozens of telemarketers.

/ / /

/ / /

/ / /

/ / /

---

[5]     LifeWatch apparently holds several accounts with Community National Bank. (Aigboboh Decl. ¶ 9, Ex. H.)  Life Alert's subpoena targets only one such account, the account from which payments to telemarketers were made.

### D. Given Its Participation In The Robo-Call Scheme And Its Other Use Of Life Alert's Trademarks, Life Alert Sued LifeWatch Again For Trademark Infringement And Unfair Competition

On May 15, 2013, Life Alert sued LifeWatch, its CEO (Evan Sirlin), and other entities, alleging violations of 15 U.S.C. § 1125(a), California statutory and common law unfair competition, trademark infringement under federal and state law, trademark dilution, and false advertising based on LifeWatch's participation in the Robo-Call Scheme, its use of Life Alert's trademarks on its website and in connection with its advertising, and its sale and attempts to sell wrongfully obtained customers to Connect America and others. (Aigboboh Decl. ¶ 3, Ex. at 2-4.)  This is the California Action.

Life Alert immediately served discovery on LifeWatch. (Aigboboh Decl. ¶ 11, Ex. at J.) Included in this discovery were requests for documents and information evidencing any companies that have provided telemarketing services on LifeWatch's behalf, and documents evidencing payments made to those companies. (*Id*.)  LifeWatch has not provided a complete list of its telemarketers.  For example, LifeWatch has failed to properly disclose the following defendant-telemarketers from the FTC Action, despite the FTC's finding that LifeWatch was "the medical device and alert response provider…that processes charges to consumers after the consumers are solicited by the…defendants [the telemarketers]":  Global Interactive Technologies, Inc., American Innovative Concepts, Inc., Elite Information Solutions Inc., Absolute Solutions Group Inc., Global Service Providers, Inc., Live Agent Response 1 LLC, Arcagen, Inc., and Unique Information Services.  (Aigboboh Decl. ¶ 15.).  Nor has LifeWatch produced a single document evidencing payments made to those (or any other) telemarketing or "outside selling" companies.  Life Alert also sought documents and information evidencing payments made by Connect America or any other entity for the purchase of customers obtained by LifeWatch through telemarketing.  To date, LifeWatch has not produced a single responsive document.  (Aigboboh Decl. ¶ 11, Ex. at J.)

Given LifeWatch's failure to produce any responsive documents or completely identify the companies that provide or provided telemarketing services for it, and the FTC's

determination that LifeWatch had paid certain of its telemarketers millions of dollars from its Operating Account with Community National Bank, Life Alert served a subpoena on Community National Bank seeking *only documents related to the Operating Account*. (Aigboboh Decl. ¶ 12, Ex. K.)  LifeWatch, as it has done repeatedly, immediately attempted to forestall Life Alert from obtaining the relevant and responsive discovery.  During a preliminary meet and confer, Life Alert indicated that it may be willing to limit certain requests, and the parties agreed to discuss the issue further.  Before that could happen, however, LifeWatch filed a motion to quash the subpoena, first with the Special Master appointed in the California Action (who does not have jurisdiction to decide such motion), and now with this Court.  Community National Bank has not objected to the subpoena.  (Aigboboh Decl. ¶ 13, Ex. L.)

### III. LIFEWATCH'S MOTION SHOULD BE DENIED

#### A. LifeWatch Has The Burden To Establish A Privacy Interest That Outweighs Life Alert's Right To Seek Relevant Discovery Under The Federal Rules Of Civil Procedure

As LifeWatch admits, it has no standing to challenge the subpoena unless it can establish that it has "some personal right or privilege with regard to documents sought." *Carey v. Berisford Metals Corp.*, 1991 U.S. Dist. LEXIS 3776, at *22 (S.D.N.Y. Mar. 28, 1991).  Thus, LifeWatch's contentions about the "undue burden" it will suffer *should Community National Bank* produce the unquestionably relevant documents should be ignored.[6]

LifeWatch, as the party "invoking a privilege bears the burden of establishing its applicability to the case at hand." *Mercator Corp. v. U.S.*, 318 F.3d 379, 384 (2d Cir. 2002).

---

[6]  In fact, in Section B of its motion ("The Subpoena To Community National Bank Should Be Quashed"), LifeWatch relies solely on its argument that it will be subjected to "undue burden." (*See*, *e.g.*, Mot. at 6-7 ("Although relevance is not one of the enumerated reasons under Rule 45 for quashing a subpoena, courts have incorporated relevance as a factor when determining motions to quash. *Noel v Bank of New York Mellon,* 2011 U.S. Dist. LEXIS 84106, *4-5 (S.D.N.Y. July 27, 2011)('Whether a subpoena imposes an 'undue burden' depends on factors including relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described, and the burden imposed.'). Specifically, under Federal Rule of Civil Procedure 45(d)(3)(A)(iv), a court must 'quash or modify' any subpoena that imposes on the recipient an 'undue burden.' Fed. R Civ.P. 45(d)(3)(A)(iv)."). This is not a proper ground for <u>a party</u> to seek to quash a subpoena to a <u>non-party</u>.

LifeWatch must also prove that the relevance of the information sought -- and Life Alert's right to seek that information under the Federal Rules – is outweighed by LifeWatch's privacy interests. *Conopco, Inc. v. Wein*, 2007 U.S. Dist. LEXIS 53314, at *5 (S.D.N.Y. July 23, 2007); *Carey*, 1991 U.S. Dist. LEXIS 3776, at *24. LifeWatch has not met its burden (and cannot do so, *inter alia*, because of the protective order in place in the California Action); therefore, as its own cases confirm, LifeWatch's motion to quash should be denied. *See*, *e.g.*, *Sierra Rutile Ltd. v. Katz*, 1994 U.S. Dist. LEXIS 6188, at **10-14 (S.D.N.Y. May 11, 1994).

> **B.    LifeWatch Has Failed To Establish A Privacy Interest In The Requested Documents Or That Its Purported Privacy Interest Outweighs Life Alert's Right To The Discovery It Seeks**

The subpoena is targeted to disclose unquestionably relevant information. Life Alert has limited its requests to LifeWatch's Operating Account – the account from which it paid its telemarketers and likely received payments for the sale of customers obtained for Connect America and others. The documents will establish several highly relevant issues in the California Action including, but not limited to, the scope of the infringement – i.e., by identifying the companies that LifeWatch retained and paid to sell its goods and services (LifeWatch has refused to provide a complete list) and the companies to which LifeWatch sold customers (LifeWatch has refused to identify these companies) – and Life Alert's damages by, among other things, establishing the total amount paid to its telemarketers and the total amounts LifeWatch earned by selling customers (LifeWatch has refused to identify these amounts). These issues go to the heart of Life Alert's case. LifeWatch has refused to produce any of this information. (*See* Aigboboh Decl. ¶ 11, Ex. J.) In fact, at least two of the telemarketers that LifeWatch told the FTC that it retained and paid millions of dollars have not been properly disclosed by LifeWatch. (Aigboboh Decl. ¶ 15.) LifeWatch has not produced any documents related to these (or any other) telemarketers or "outside sellers."

Even if LifeWatch did produce some or all of the information requested from Community National Bank, it would be irrelevant to its motion to quash for at least two reasons. First, as LifeWatch admits, the only ground on which it can challenge the subpoena to Community

National Bank is privilege.  That LifeWatch will produce some (or even all) of the information requested from Community National Bank is relevant only to a contention that the subpoena to Community National Bank is cumulative or burdensome to Community National Bank, but does not support LifeWatch's motion that the Court quash the subpoena.  As it admits, LifeWatch does not have standing to make these objections.  Only Community National Bank may object on these grounds.  It has not done so.  If a production by LifeWatch of the requested information has any other relevance at all, it only serves to undermine Life Alert's claim that the requested information is privilege.

Second, Life Alert is entitled to test and confirm the information produced by LifeWatch by seeking discovery from third parties, particularly given that LifeWatch has unquestionably failed to comply with its discovery obligations or provide complete responses to Life Alert's discovery responses.  LifeWatch cannot dispute this, as it has made identical arguments in the California Action, in support of its demands for third party discovery.  (Aigboboh Decl. ¶ 14, Ex. M.)

The unquestionable relevance of this information outweighs any purported confidentiality concerns advanced by LifeWatch.  As an initial matter, LifeWatch has made no attempt to establish why the information sought is subject to any privilege other than its conclusory arguments that the information sought it "commercially sensitive information that Lifewatch has a right to keep confidential."  (Mot. at 6.)  Financial information "do[es] not enjoy an absolute privilege from discovery."  *Del Campo v. Am. Corrective Counseling Servs., Inc.*, 2008 U.S. Dist. LEXIS 93298, at **8-9 (N.D. Cal. Nov. 10, 2008).  LifeWatch must establish *why* the financial information should be treated as confidential.  It cannot simply assume that it is confidential because it is financial information.

Furthermore, even if LifeWatch had properly demonstrated the confidentiality of the information sought, LifeWatch has completely ignored its burden to explain how its purported privacy concerns outweigh the relevance of the information sought or are not fully resolved by the protective order entered in the California Action, which Life Alert provided to Community

National Bank with the subpoena, and which provides for the production of documents subject to its terms.  In particular, the protective order in the California Action provides that any information, including "business or financial information," may be produced as "Confidential" or "Attorney's Eyes Only."  (Aigboboh Decl. ¶ 12, Ex. K.)  A designation of "Attorney's Eyes Only" limits disclosure to outside counsel, experts and the California court.  (*Id*.)  As such, there is no privacy concern.  Indeed, as the cases cited by LifeWatch confirm, courts routinely deny motions to quash when the movant fails to establish that its purported privacy concerns cannot be satisfied by protective orders with similar terms.  *See*, *e.g.*, *Iglesias-Mendoza v. La Belle Farm, Inc.*, 2008 U.S. Dist. LEXIS 47431 (S.D.N.Y. June 12, 2008) (denying motion to quash subpoena to non-party bank after weighing defendants' privacy interest in banking records against "threshold showing of…relevancy" made by plaintiff and "conclude[ing] that the subpoena should be enforced with an appropriate confidentiality order."); *Conopco, Inc. v. Wein*, 2007 U.S. Dist. LEXIS 53314, at * (S.D.N.Y. July 23, 2007) ("There is no dispute that Wein has a privacy interest in her personal financial affairs; yet, even the confidentiality of personal financial matters must yield to the Federal Rules of Civil Procedure, which govern the discovery of information relevant to the claims and defenses in a federal court action.  'Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.' Fed. R. Civ. P. 26(b)(1).  Thus, to the extent that the financial information Plaintiff seeks is relevant, it must be produced.  Its confidentiality can be protected by a variety of means, most notably the Confidentiality Order entered in this action."); *Brassco, Inc. v. Klipo*, 2004 U.S. Dist. LEXIS 11164, at **5-8 (S.D.N.Y. June 21, 2004) (concluding that bank records that may show financial gain from allegedly improper transactions are not privileged, and any privacy interest can be addressed by a protective order); *Sierra Rutile Ltd.*, 1994 U.S. Dist. LEXIS 6188, at *9 (denying motion to quash because movant had failed to prove privacy concerns outweigh relevance even though subpoenas could seek some irrelevant information).

### C. Even If LifeWatch Had Met Its Burden, Denial Of Its Motion Would Still Be Appropriate

Finally, even if LifeWatch had met its burden in establishing that its privacy concerns outweigh the relevance of the information sought and cannot be assuaged by the protective order in the California Action, denial of its motion would still appropriate. As Life Alert made clear to LifeWatch during the parties' preliminary meet and confer, Life Alert is entitled to evidence of who LifeWatch pays to sell its goods and services and to whom LifeWatch has sold customers. These parties are key to Life Alert's claims, will help establish the nature and scope of LifeWatch's infringing conduct, and will provide key evidence of damages. As discussed above, LifeWatch has refused fully to identify these parties and, even if it had properly identified them, Life Alert is still entitled to test LifeWatch's statements against documents produced by a neutral third party. Thus, even if the Court finds some privacy interest, it should not quash the subpoena, but instead modify it to provide for the production of documents that show payments from LifeWatch to third parties and payments to LifeWatch from third parties. *See*, *e.g.*, *Chazin v. Lieberman*, 129 F.R.D. 97, 98 (S.D.N.Y. 1990) (finding some privacy interest stated but refusing to quash, instead modifying subpoena to restrict scope.).

As is discussed above, LifeWatch has failed to identify its telemarketers and the parties to whom it sold customers obtained by those telemarketers. If it had (reliably) done so, the subpoena could have been limited to payments to and from those parties. Life Alert, however, has refused to comply with even these basic discovery requests, has hidden the identities and locations of its telemarketers, and has generally hindered Life Alert's ability to build its case in accordance with the Federal Rules. Having thwarted Life Alert's discovery efforts in this case, LifeWatch cannot now be heard to complain that Life Alert has been forced to seek the discovery to which it is entitled from Community National Bank or any other third party.

/ / /

/ / /

/ / /

-13-

## IV. CONCLUSION

For the foregoing reasons, LifeWatch's motion to quash the subpoena to non-party Community National Bank should be denied.

Respectfully submitted,

SHEPPARD MULLIN RICHTER & HAMPTON LLP

Dated:  December 22, 2014

/s/ Theodore Max

Theodore Max
30 Rockefeller Plaza
New York, New York 10112
Telephone: 212-653-8700
Facsimile: 212-653-8701

*Attorneys for Plaintiff*
LIFE ALERT EMERGENCY RESPONSE, INC.

SMRH:435561806.5